IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ONEGO BIO INC., <br><br> Plaintiff, <br><br> v. <br><br> CLARA FOODS CO. d/b/a THE EVERY COMPANY, <br><br> Defendant. | C.A. No. _____ |

**COMPLAINT FOR DECLARATORY JUDGMENT[1]**

Plaintiff Onego Bio Inc. ("Onego" or "Plaintiff"), by and through its undersigned counsel, alleges as follows for its Complaint against Defendant Clara Foods Co. d/b/a The EVERY Company ("Every" or "Defendant"):

**NATURE OF ACTION**

1. This is an action for declaratory judgment of invalidity, unenforceability, and noninfringement of U.S. Patent No. 12,096,784 ("the '784 patent," attached as Exhibit A).

2. This action arises from Every's attempts to enforce the '784 patent and to demand unwarranted patent licensing fees from Onego.

3. This action also arises from Every's tortious interference with Onego's current and prospective economic relationships by, for example, telling third parties that Onego has an infringement issue with Every's patent rights

---

[1] A complaint is being concurrently filed in the Western District of Wisconsin. Delaware is an alternative in case the Western District of Wisconsin does not find personal jurisdiction over Every. Onego does not intend to proceed with litigation in Delaware unless that happens.

1

4. As set forth in more detail below, not only has Every attempted to extort unwarranted patent license fees from Onego, but Every has committed actions that rise to the level of fraud in obtaining the '784 patent.

## JURISDICTION AND VENUE

5. This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

6. This action also arises under the patent laws of the United States, 28 U.S.C. §§ 1331 and 1338(a).

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391. Onego is a Delaware corporation, subject to personal jurisdiction in this District. In addition, Every is subject to personal jurisdiction in this District.

8. This Court has personal jurisdiction over Every because Every is a corporation organized and existing under the laws of Delaware, is qualified to do business in Delaware, and has appointed a registered agent for service of process in Delaware. As such, Every has purposefully availed itself of privileges of conducting business in Delaware and consented to general personal jurisdiction in Delaware.

9. Every has directed its products and business activities to Delaware through its websites (www.everyegg.com and www.every.com), which are accessible to residents in Delaware. Accordingly, Every's products are directed to and used in this state.

10. Every has availed itself of the rights and benefits of the laws of Delaware.

11. An actual and substantial controversy exists between Onego and Every due to Every's threats regarding its patent portfolio, including the '784 patent. For example, Every stated in a July 30, 2025 email to Onego that "we want to reiterate that we are very confident in our patent portfolio

2

and strongly discourage pursuing the invalidation option you articulated" and referred to Onego's need for a patent license.

12. Every has continued to demand that Onego take a patent license and in an August 8, 2025 letter stated "EVERY is confident in the strength, robustness, and legitimacy of its patent estate."

13. An August 15, 2025 email from Every responded to Onego's questioning of the need for a patent license from Every by stating "We encourage you and your team to diligence our patent portfolio to fully understand where and how the patents apply to Onego."

14. In addition, Every has told third parties, including potential Onego investors, that Onego needs a patent license from Every or Onego would be infringing Every's patents.

15. Moreover, Every's demands for resolution have been objectively unreasonable and have included a proposed merger with Onego at a severe devaluation, making it clear that Every is really only interested in Onego's commercially successful technology. Onego has conveyed to Every that it is not interested in such a partnership and that the parties should instead focus on their respective businesses using their very different technologies.

## THE PARTIES

16. Plaintiff Onego Bio Inc. is a corporation organized under the laws of Delaware, with a place of business at 9215 Brown Deer Rd, Suite C, San Diego, CA 92121. In addition, Onego is building a manufacturing plant in Wisconsin and can be reached at 864 Collins Rd, Jefferson, WI 53549.

17. Defendant Clara Foods Co. d/b/a The EVERY Company is a corporation organized under the laws of Delaware, with a place of business at 2001 Junipero Serra Blvd, 9th Floor, Daly City, California 94014.

## BACKGROUND

### Onego and its technology to produce ovalbumin using fungus

18. Onego is a biotechnology company specializing in the production of animal-free egg proteins through precision fermentation. Founded in 2022 as a spin-off from VTT Technical Research Centre of Finland ("VTT"), Onego aims to revolutionize the food industry by offering sustainable and ethical alternatives to traditional egg products.

19. Onego utilizes the fungus *Trichoderma reesei*, which is known for its rapid growth and high enzyme production capabilities, to make recombinant ovalbumin ("rOVA") in a manner that is suitable for large-scale protein manufacturing. Ovalbumin is the primary protein in egg whites.

20. One of Onego's co-founders was employed at VTT and used *Trichoderma reesei* to produce ovalbumin without the use of animals. This breakthrough led to the establishment of Onego in 2022.

21. VTT has played a pivotal role in Onego's development by providing the foundational research and technology that has enabled the company's innovative approach to egg protein production. The collaboration between VTT and Onego exemplifies the successful transition of scientific research into commercial applications, addressing global challenges in food sustainability and ethical sourcing.

22. Since its inception, Onego has achieved significant milestones, including raising seed funding in 2022 to commercialize its technology. In 2024, the company secured an additional Series A funding to scale up production and expand its market presence, particularly in North America. Onego's protein offers a bioidentical alternative to traditional egg whites, providing the same nutritional and functional properties without the environmental and ethical concerns associated with conventional egg production.

### Onego's expansion in Jefferson County, Wisconsin

23. Onego is expanding its operations into the United States with the establishment of a flagship manufacturing facility in Jefferson County, Wisconsin. This facility will be located within the county's Food and Beverage Innovation Campus. The Jefferson County Board of Supervisors approved Onego's acquisition of 25.9 acres in December 2024.

24. Onego's planned 130,000-square-foot facility is dedicated to producing Onego's protein product, which offers the same taste, nutrition, and functionality as traditional egg whites while providing greater cost stability, supply reliability, and a 90% smaller environmental footprint than conventional methods of production. Once operational, the plant is expected to produce protein equivalent to the output of 6 million laying hens annually.

25. Wisconsin was chosen for this expansion due to its strong history in food manufacturing, skilled workforce, and abundant corn supply, which is desirable for the fermentation process. In selecting Wisconsin, Onego emphasized the personal significance of this location, as its co-founder is a Wisconsin native and graduate of the University of Wisconsin-Madison.

### Every's production of ovalbumin using yeast

26. In contrast, Every utilizes the yeast strain *Pichia pastoris* (a/k/a *Komagataella phaffii*) for the production of its animal-free egg proteins. This yeast is selected for its ability to perform complex post-translational modifications, such as glycosylation, which are useful for producing bioidentical proteins.

27. As such, Onego and Every use two different technologies (one fungus-based, one yeast-based). The choice between *Trichoderma reesei* and *Pichia pastoris* reflects each company's specific production goals and the desired characteristics of their protein products.

Every's solicitation of Onego's technology

28. Every has actively sought access to Onego/VTT's technology using fungus. For example, Every attended a VTT webinar on December 15, 2016, ("the 2016 Webinar," attached as Exhibit B). Onego's co-founder was the lead presenter at this webinar, which was attended on behalf of Every by two of the purported inventors of the '784 patent. Every accessed and downloaded the webinar slides.

29. The 2016 Webinar discussed "Cell factories for recombinant protein production used at VTT" and included both *Trichoderma reesei* and *Pichia pastoris*. It went into detail about the benefits of using *Trichoderma reesei*, showed a picture of a bioreactor used by VTT, and discussed how "Fungal-based protein production [can be used in a] Variety of possible products (e.g. egg and dairy)."

30. Every attended another VTT webinar on May 17, 2018. Onego's co-founder again presented at this webinar. And again, it was attended on behalf of Every by one of the named inventors of the '784 patent as well as Every's current CEO. This webinar went into detail about making ovalbumin (the protein found in eggs) using *Trichoderma reesei*, stating "We have produced [ovalbumin] using *Trichoderma reesei* in bioreactors" and that the "Costs [are] on a par with Chicken."

31. Shortly thereafter Every requested and then on September 24, 2018 signed an NDA with VTT to learn about VTT's protein production technology using *Trichoderma reesei*. Pursuant to the NDA, Every and VTT had detailed discussions over the course of many months. Every requested and was provided additional technical information on the use of *Trichoderma reesei* for protein production.

32. For example, Every requested and was provided a project plan from VTT on how to

make protein using *Trichoderma reesei*. This included detailed information not only on product characteristics, but production methods, as well as the underlying data—everything to make the protein. Every even requested and was provided ordering information for VTT's protein made using *Trichoderma reesei*.

33. These activities occurred before the earliest possible priority date of the '784 patent, which is July 11, 2019.

34. Every has never stated that it made protein using fungus (e.g., *Trichoderma reesei*), much less before the earliest priority date of the '784 patent. To the contrary, it sought technical information from VTT on how to do so.

35. Every did not provide the webinars or any other VTT documents to the USPTO when prosecuting the application that became the '784 patent. Pursuant to 37 CFR § 1.56, Every had a duty to disclose such relevant information to the USPTO.

<u>The '784 patent and its improper attempts to claim rOVA from *Trichoderma reesei*</u>

36. Every has attempted to patent technologies that were well-known by VTT before the '784 patent's earliest claimed priority date of July 11, 2019.

37. As an example, claim 8 is broad:

> 8. An ingredient composition for producing a food item, the ingredient composition comprising:
>     a recombinant ovalbumin protein (rOVA); and
>     one or more additional consumable ingredients;
>     wherein:
>     the pH of the ingredient composition, when solubilized in an aqueous solution, is above 3.5, and
>     the ingredient composition provides to the food item at least one characteristic that is at least equivalent to a same characteristic in an otherwise similar food item that comprises native egg white and does not comprise rOVA.

38. Claim 8 does not expressly limit how (or from which organism) the rOVA is produced. The claim simply requires the presence of recombinant ovalbumin protein, and does not directly

7

specify or restrict the source organism for the rOVA.

39. Claims depending on claim 8 purport to elaborate on additional aspects, such as glycosylation status, amino acid sequence, expression by a yeast or fungal host cell (claims 15, 16, 17), and further cite specific *genera* (e.g., "a fungal host cell" in claim 17; "a *Trichoderma* species" in claim 18). Other claims directly recite the possibility that rOVA may be expressed in yeast— "wherein the rOVA is expressed by a yeast host cell" (claim 15).

40. Accordingly, claim 8 ostensibly attempts to cover the use of both *Trichoderma reesei* and *Pichia pastoris*.

41. However, while the specification of the '784 patent purports to give detailed instructions and examples for making rOVA from the *Pichia pastoris* yeast, it provides no instructions or examples for making rOVA from the *Trichoderma reesei* fungus.

42. The USPTO examiner did not appear to substantively review the application that became the '784 patent but allowed it in the first office action.

43. Following issuance of the '784 patent, Every issued a press release claiming that it had been granted a "foundational patent" for the industry[2]. The press release states that "[t]he newly granted ['784] patent generally covers any ingredient composition for food products that incorporates recombinant ovalbumin".

44. But the "foundational" technology claimed in the '784 patent had been known and practiced by VTT at least since Every attended the 2016 Webinar presented by Onego's co-founder.

45. Every's attempts to patent the publicly known technology render the '784 patent invalid and unenforceable.

---

[2] https://every.com/press-releases/patent-for-ovalbumin-produced/

## CLAIMS FOR RELIEF

### COUNT I: Declaratory Judgment of Invalidity Under 35 U.S.C. § 112

46. Onego incorporates by reference all preceding paragraphs.

47. The '784 patent is invalid under 35 U.S.C. § 112 for lack of enablement and/or written description and/or lack of clarity. For example, the '784 patent lacks support for enabling the production of protein using *Trichoderma reesei*.

48. In addition, the '784 patent lacks clarity in claim language, which includes negative limitations, limitations directed to intended effects, and issues with antecedent bases. As an example, claim 19 purports to claim rOVA but recites "SEQ ID NO: 2," which is a sequence for recombinant ovomucoid (rOVD) and not for rOVA. In fact, the '784 patent does not disclose any sequences for rOVA in the claims.

49. Still further, the '784 patent incorrectly claims priority to multiple patent families.

50. Accordingly, Onego is entitled to judgment that the '784 patent is invalid.

### COUNT II: Declaratory Judgment of Invalidity Under 35 U.S.C. §§ 102/103 (2016 Webinar)

51. Onego incorporates by reference all preceding paragraphs.

52. The '784 patent is invalid under 35 U.S.C. §§ 102 and/or 103 based at least on public availability. For example, the 2016 Webinar was attended by Every and discloses at least claim 8. Every described the '784 patent in its press release as covering "any ingredient composition for food products that incorporates recombinant ovalbumin."

53. The 2016 Webinar is dated December 15, 2016 and predates the earliest possible priority date of the '784 patent, which is July 11, 2019, and so qualifies as prior art at least under 35 U.S.C. § 102(a)(1).

54. Every did not provide the USPTO with the 2016 Webinar (or any other VTT documents) during prosecution of the application that became the '784 patent, despite its duty of disclosure.

55. Accordingly, Onego is entitled to judgment that the '784 patent is invalid.

**COUNT III: Declaratory Judgment of Invalidity Under 35 U.S.C. §§ 102/103 (Anchel)**

56. Onego incorporates by reference all preceding paragraphs.

57. The '784 patent is invalid under 35 U.S.C. §§ 102 and/or 103 based on Every's own U.S. Pub. No. 2018/0355020 ("Anchel," attached as Exhibit C).

58. Anchel published on December 13, 2018 and predates the earliest possible priority date of the '784 patent, which is July 11, 2019, and so qualifies as prior art at least under 35 U.S.C. § 102(a)(1).

59. To the extent Every argues that the '784 patent is enabled, then Anchel should be found enabling to render the '784 patent invalid[3].

60. Anchel was not substantively considered by the USPTO during examination of the application that became the '784 patent.

61. Accordingly, Onego is entitled to judgment that the '784 patent is invalid.

**COUNT IV: Declaratory Judgment of Invalidity
Under 35 U.S.C. §§ 101/115 (Incorrect Inventorship)**

62. Onego incorporates by reference all preceding paragraphs.

63. The '784 patent is invalid under 35 U.S.C. §§ 101 and/or 115 for improper inventorship and/or derivation.

---

[3] Onego reserves the right to argue that Anchel is not enabled, just as the '784 patent is not enabled.

64. The subject matter of claim 8, as an example, was disclosed by VTT in the 2016 Webinar as well as during subsequent discussions between Every and VTT. Accordingly, the named inventors of the '784 patent did not invent the subject matter of claim 8.

65. At a minimum, the claimed subject matter of the '784 patent was derived from others, including employees of VTT.

66. Accordingly, Onego is entitled to judgment that the '784 patent is invalid.

### COUNT V: Declaratory Judgment of Unenforceability

67. Onego incorporates by reference all preceding paragraphs.

68. The '784 patent is unenforceable for multiple reasons. This includes inequitable conduct for Every's failures to cite the 2016 Webinar (and other VTT documents) despite its duty of disclosure.

69. The '784 patent is also unenforceable for patent misuse, as Every is attempting to unlawfully extend and/or anti-competitively restrain trade beyond its valid patent rights.

70. The '784 patent is also unenforceable due to Every's unclean hands, as Every has acted in bad faith relating to the subject matter of the patent such as by soliciting technology from VTT and then securing the '784 patent.

71. The '784 patent is also unenforceable for fraud on the USPTO, as Every has knowingly made misrepresentations to the USPTO such as by claiming incorrect inventorship. As another example, Every's recitation in claim 19 of rOVA and a sequence for rOVD likely misled the USPTO about the subject matter being claimed.

72. Accordingly, Onego is entitled to judgment that the '784 patent is unenforceable.

### COUNT VI: Declaratory Judgment of Noninfringement

73. Onego incorporates by reference all preceding paragraphs.

74. Onego does not infringe the '784 patent at least because it is invalid and unenforceable. For example, Every has not shown its valid patent protection extends to the use of *Trichoderma reesei* to make rOVA.

75. To the extent Every argues interpretations of claim language to maintain validity and enforceability of the '784 patent, Onego reserves the right to advance additional noninfringement arguments.

76. Accordingly, Onego is entitled to judgment that the '784 patent is not infringed by Onego.

## EXCEPTIONAL CASE

77. Onego incorporates by reference all preceding paragraphs.

78. This is an exceptional case under 35 U.S.C. § 285 and, as such, Onego is entitled to recover its attorneys' fees and costs from Every that is has incurred in connection with this action.

79. Every's activities supporting a finding of exceptional case include its tortious interference by telling third parties (including potential investors) that Onego has a patent issue, and its interference with Onego's current and prospective economic relationships.

80. In addition, by its actions Every is attempting to unfairly compete with Onego in the marketplace.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court issue:

A.   A judgement in favor of Plaintiff and against Defendant on each and every claim;

B.   A judgement that the '784 patent is invalid;

C.   A judgement that the '784 patent is unenforceable;

D.   A judgement that Onego does not infringe any valid and enforceable claim of the '784 patent;

E.  A judgement that this is an exceptional case and awarding Plaintiff its costs, expenses, disbursements, and reasonable attorneys' fees under 35 U.S.C. § 285 and all other applicable statutes, rules, and common law;

F.  A judgement awarding such other and further relief as the Court deems just and proper or otherwise permitted by law.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: September 10, 2025            Respectfully submitted,

*/s/ Stamatios Stamoulis*

Stamatios Stamoulis (#4606)
**STAMOULIS & WEINBLATT LLC**
800 N. West Street, Third Floor
Wilmington, DE 19801
302.999.1540 Phone
302.762.1688 Fax
stamoulis@swdelaw.com

Jeffer Ali (*pro hac vice* forthcoming)
**HUSCH BLACKWELL LLP**
80 S. Eighth Street, Suite 4800
Minneapolis, MN 55402
612.852.3610 Phone
612.852.2701 Fax
jeffer.ali@huschblackwell.com

Stephen F.W. Ball, Jr. (*pro hac vice* forthcoming)
**HUSCH BLACKWELL LLP**
One Congress Street, Suite 3102
Boston, MA 02114
617.598.6700 Phone
617.598.6790 Fax
stephen.ball@huschblackwell.com

***Counsel for Plaintiff Onego Bio Inc.***