# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ONEGO BIO INC., | ) |
| | ) |
|        Plaintiff, | ) |
| | )   C.A. No. 25-1131-JDW |
|       v. | ) |
| | ) |
| CLARA FOODS CO. d/b/a THE EVERY | ) |
| COMPANY, | ) |
| | ) |
|        Defendant. | ) |

## DEFENDANT THE EVERY COMPANY'S
## <u>BRIEF IN SUPPORT OF MOTION FOR SANCTIONS</u>

<table>
<tr><td>

OF COUNSEL:

Jeffrey M. Theodore
Yekaterina Kushnir
BRAUNHAGEY & BORDEN LLP
747 Front Street
4th Floor
San Francisco, CA 94111
Tel:  (415) 599-0210


Dated: May 11, 2026
12915722 / 25461.00001

</td><td>

Bindu A. Palapura (#5370)
Andrew M. Moshos (#6685)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
bpalapura@potteranderson.com
amoshos@potteranderson.com

*Attorneys for Defendant Clara Foods Co.
d/b/a The EVERY Company*

</td></tr>
</table>

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

NATURE AND STAGE OF THE PROCEEDING ............................................................... 2

SUMMARY OF ARGUMENT ............................................................................................ 3

BACKGROUND .................................................................................................................. 4

      A.     The EVERY Company ................................................................................. 4

      B.     Onego ........................................................................................................... 4

      C.     Onego's Duplicative Litigations ................................................................. 5

LEGAL STANDARDS ....................................................................................................... 6

ARGUMENT ....................................................................................................................... 7

I.      ONEGO IS PURSUING DUPLICATIVE LITIGATION IN THIS
DISTRICT AND THE WESTERN DISTRICT OF WISCONSIN FOR
AN IMPROPER PURPOSE ................................................................................... 7

II.     ONEGO'S COMPLAINT AND AMENDED COMPLAINT
MISREPRESENT AND OMIT FACTS ................................................................. 9

      A.     Onego's False Advertising Claim Is Based on Allegations That Onego Knows to
Be False and Knew Were False When It Filed the Amended Complaint .............. 9

      B.     Onego's Allegation That It Has a Commercial Product Is False ......................... 12

      C.     Onego's Allegations That EVERY Threatened It and Asserted the '784 Patent
Against It Are False ............................................................................................. 12

III.    THE COURT SHOULD DISMISS THE COMPLAINT AND ORDER
ONEGO AND ITS COUNSEL TO PAY EVERY'S FEES ........................................... 14

CONCLUSION ................................................................................................................. 15

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Bailey v. United States*,
  1996 WL 494270 (N.D. Ill. Aug. 27, 1996) ................................................................8

*Certified Nutraceuticals v. Avicenna Nutraceutical*,
  2018 WL 5840042 (S.D. Cal. Nov. 7, 2018) ..............................................................11

*Cooter & Gell v. Hartmarx Corp.*,
  496 U.S. 384 (1990) ......................................................................................................6

*Doering v. Union Cnty. Bd. of Chosen Freeholders*,
  857 F.2d 191 (3d Cir. 1988) ........................................................................................15

*Ellis v. Beemiller, Inc.*,
  287 F.R.D. 326 (W.D. Pa. 2012) .................................................................................12

*Eon-Net LP v. Flagstar Bancorp*,
  653 F.3d 1314 (Fed. Cir. 2011) .....................................................................................7

*Garr v. U.S. Healthcare, Inc.*,
  22 F.3d 1274 (3d Cir. 1994) ...........................................................................................7

*Kapco Mfg. Co. v. C & O Enters.*,
  886 F.2d 1485 (7th Cir. 1989) .......................................................................................7

*Lieb v. Topstone Indus.*,
  788 F.2d 151 (3d Cir. 1986) ........................................................................................15

*Lincoln Benefit Life Co. v. AEI Life, LLC*,
  800 F.3d 99 (3d Cir. 2015) .............................................................................................7

*McGreal v. Vill. of Orland Park*,
  928 F.3d 556 (7th Cir. 2019) .......................................................................................11

*McKenna v. City of Phila.*,
  304 F. App'x 89 (3d Cir. 2008) .....................................................................................8

*Milwaukee World Trading LLC v. Kapsch*,
  2023 WL 2541556 (E.D. Wis. Mar. 16, 2023) .......................................................11, 12

*New v. JPMorgan Chase Bank, NA*,
   730 F. Supp. 3d 851 (N.D. Ind. 2024) ........................................................................8

*Refac Int'l, Ltd. v. Hitachi, Ltd.*,
   141 F.R.D. 281 (C.D. Cal. 1991) ...............................................................................7

*Scott v. Vantage Corp.*,
   64 F.4th 462 (3d Cir. 2023) ........................................................................................6

*The Haytian Republic*,
   154 U.S. 118 (1894)....................................................................................................8

*Vehicle Operation Techs. LLC v. Am. Honda Motor Co. Inc.*,
   67 F. Supp. 3d 637 (D. Del. 2014)........................................................................6, 15

*Walton v. Eaton Corp.*,
   563 F.2d 66 (3d Cir. 1977)..........................................................................................8

*Wharton v. Superintendent Graterford SCI*,
   95 F.4th 140 (3d Cir. 2024) .................................................................................11, 13

## STATUTES

28 U.S.C. § 1927............................................................................................................ passim

## RULES

Fed. R. Civ. P. 11 ........................................................................................................... passim

## REGULATIONS

21 C.F.R. § 170.30(a)............................................................................................................11

## INTRODUCTION

Onego and its counsel should be sanctioned under Fed. R. Civ. P. 11 and 28 U.S.C. § 1927 because they have been wasting the Court's and EVERY's time and resources for months with improper duplicative litigation based on knowingly false factual allegations.

EVERY is an innovative company that has successfully developed a commercial-scale, recombinant ovalbumin egg protein that can be used as a replacement for natural eggs. Onego is a want-to-be competitor that has been unable to develop a commercial product and now seeks to buy time by using the court system to interfere with EVERY's ability to build its business.

Last September, Onego filed identical cases in two district courts strategically timed to interfere with EVERY's fundraising round. Onego's factual allegations are false – particularly its claim that EVERY's ovalbumin product contains additional amino acids that are not bioidentical to natural egg protein. *See, e.g*., First Amended Complaint, D.I. 19 ("FAC") ¶¶ 4, 57, 59, 62-63, passim. EVERY provided Onego with definitive testing results showing that fact. Onego has EVERY's product and could do the same testing and get the same results. Indeed, it is likely that Onego has done that testing. But Onego refuses to say whether it has done testing of EVERY's product or what the results are.

Onego's jurisdictional allegations are equally false. Onego alleges that EVERY has "attempt[ed] to enforce" U.S. Patent No. 12,096,784 (the "'784 Patent") and "attempted to extort" Onego, among other allegations by which Onego attempts to manufacture subject matter jurisdiction. *E.g*., FAC ¶¶ 2, 4–5. Even a brief review of the record demonstrates that this is not true. EVERY never threatened Onego or attempted to enforce its patents. Onego's jurisdictional allegations are flat out false. *See* D.I. 10-1 Exs. 3–7.

Onego should never have brought its suit and should by now have withdrawn its false claims. Instead, it is using litigation to drain EVERY's limited resources. Onego's abuse of the

legal system is a violation of Rule 11 and Section 1927. This case should be dismissed with prejudice and monetary sanctions should be imposed on Onego and its lawyers to compensate EVERY and deter Onego and its counsel from future baseless litigation.

## NATURE AND STAGE OF THE PROCEEDING

On September 10, 2025, Onego simultaneously filed identical complaints against EVERY for declaratory judgment of invalidity and non-infringement of an EVERY patent in this Court (D.I. 1) and the Western District of Wisconsin. (*Onego Bio Inc. v. Clara Foods Co. d/b/a The EVERY Company*, No. 3:25-cv-761 ("Wisc. Action"), D.I. 1.) Onego has amended its complaints in both courts to add the exact same Lanham Act claim. D.I. 19; Wisc. Action, D.I. 7. EVERY's motions to dismiss this action and to dismiss the Wisconsin complaint are fully briefed and pending. D.I. 26, 37; Wisc. Action, D.I. 17, 39. At Onego's insistence, and over EVERY's objection, discovery is proceeding in the Wisconsin litigation pending a decision on the motion to dismiss.[1]

In this matter, the Court denied Onego's request for an extension of the deadline for service and instructed Onego to file a motion to stay following service. D.I. 6. On December 10, 2025, Onego served the complaint but to date has not moved to stay. D.I. 8. On December 23, 2025, EVERY moved to dismiss this duplicative litigation for, among other things, lack of subject matter jurisdiction. D.I. 10. Rather than oppose that motion or move to stay, on January 13, 2026, Onego amended its complaint to add a Lanham Act claim that is identical to the claim that Onego asserted in the Wisconsin litigation on September 30, 2025—4 months earlier—and that is subject to the

---

[1] EVERY served this Motion on Onego on April 8. On May 1, EVERY reminded Onego that it would file if the Complaint were not withdrawn and asked to confer on sealing, which the Parties did on May 8. In the interim, on May 5, the Court in Wisconsin dismissed that case for lack of personal jurisdiction. Wisc. Action, D.I. 143. In accordance, with Rule 11, EVERY has not updated the text of this brief to reflect that development, which does not change the impropriety of duplicative litigation or of Onego's allegations, but adds this note so the Court is apprised.

pending motion to dismiss. D.I. 19. On February 3, 2026, EVERY again moved to dismiss this action because there is no declaratory judgment jurisdiction and Onego failed to state a justiciable Lanham Act claim. That motion is now fully briefed and pending.

Thus, Onego is maintaining identical declaratory judgment and Lanham Act claims in two forums—here and W.D. Wisconsin based on the same false allegations.

### SUMMARY OF ARGUMENT

Onego's litigation of identical causes of action in this Court and in the Western District of Wisconsin is a waste of the Court's resources that Onego and its counsel are pursuing for the sole purpose of harassing EVERY into acquiescing to Onego's demands. That improper purpose is a sanctionable violation of Fed. R. Civ. P. 11 and 28 U.S.C. § 1927. Rule 11 requires a reasonable inquiry into the law and facts and a certification that the allegations are warranted and have evidentiary support. Section 1927 requires that "any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Onego's Amended Complaint is sanctionable under both standards.

*First*, Onego has improperly brought two duplicative litigations in violation of the rule that a single case and controversy must be brought as a single litigation to avoid duplication and waste of judicial resources.

*Second*, Onego's Amended Complaint alleges – and is premised on – supposed facts about EVERY's recombinant egg protein product that Onego knows are not true. Specifically, Onego alleges that EVERY's ovalbumin contains additional amino acids not found in native egg protein. But as Onego knows from EVERY's testing – and either knows or could know from its own testing of EVERY product in Onego's possession – EVERY's ovalbumin egg protein does not have the additional amino acids.

3

*Third*, Onego's claim of subject matter jurisdiction is premised on false allegations that EVERY made "threats" against Onego and "attempt[ed] to enforce the '784 Patent." Those allegations are out-and-out untrue, as shown in the actual communications between the parties. Onego is in possession of that correspondence, which has been available on this Court's docket for months. But Onego refuses to withdraw its false allegations.

## BACKGROUND

### A.    The EVERY Company

EVERY was founded in 2015 and is a biotechnology company committed to developing methods of making proteins traditionally sourced from animals. EVERY pioneered novel microbial fermentation techniques for manufacturing recombinant proteins, including OVA—the primary protein found in egg whites. Using this recombinant (rOVA) technology, EVERY developed the first non-animal egg white protein products, including OvoPro$^{TM}$, which is a functional alternative to protein harvested from animals and is now an ingredient in a variety of food products made by EVERY's customers. For more than ten years, EVERY has developed a patent portfolio covering its innovative microbial fermentation techniques and products.

### B.    Onego

Onego was founded in 2022, seven years after EVERY. Onego does not have any commercial product but has publicly stated that it aspires to build a manufacturing plant to produce rOVA. Onego's business operates in Finland and San Diego, California.

In May 2025, Onego initiated a discussion with EVERY expressing a desire to gain access to EVERY's intellectual property portfolio. EVERY listened to Onego's request and engaged in extensive good faith conversations, during which Onego repeatedly threatened invalidity litigation. Ultimately, EVERY declined Onego's demand that EVERY accept a low-ball offer for a broad-based IP license. *See* D.I. 10-1 Exs. 1–10; D.I. 10 at 3–7; D.I. 39 at 2–3.

4

### C.    Onego's Duplicative Litigations

In response to that refusal and in an effort to interfere with EVERY's ongoing fundraise, Onego filed simultaneous, duplicative declaratory judgment litigations against EVERY on September 10, 2025, in this Court and the Western District of Wisconsin.

*Wisconsin*. Onego served the Wisconsin complaint, waited until the deadline to amend without leave of court, and on September 30, 2025 amended to add a Lanham Act claim. D.I. 7. On October 28, 2025, EVERY moved to dismiss the amended Wisconsin complaint for lack of personal jurisdiction, improper venue, lack of subject matter jurisdiction, and failure to state a claim. D.I. 17. That motion is fully briefed and pending. Onego insisted, over EVERY's objection, that discovery proceed in Wisconsin notwithstanding EVERY's case-dispositive, pending motion to dismiss.

*Delaware*. Three months after filing the complaint in this matter, on December 5, 2025, Onego moved to extend the time to serve the complaint, stating: "[p]roceeding with service and related deadlines in Delaware now would risk inefficiency, duplication of effort, and potential prejudice to the parties and the Court." D.I. 5, ¶ 6. That same day, the Court denied Onego's motion stating "[s]hould Plaintiff request a stay of these proceedings, it should file a motion to stay after the complaint has been served." D.I. 6. Onego served the complaint on December 10, 2025 (D.I. 8) but to date has not filed any motion to stay. On December 23, 2025, EVERY moved to dismiss this duplicative litigation for, inter alia, lack of declaratory judgment subject matter jurisdiction. D.I. 10. Onego requested that EVERY agree to an extension of the deadline for Onego to oppose the motion, and as a courtesy EVERY agreed to a one-week extension. D.I. 16. On the deadline for Onego to oppose EVERY's motion to dismiss, January 13, 2026, Onego amended its complaint to add a Lanham Act claim (D.I. 19), that is identical to the claim that Onego asserted in the Wisconsin litigation nearly four months earlier and that is subject to the pending motion to dismiss.

5

Onego further provides in a footnote that "Delaware is an alternative in case the Western District of Wisconsin does not find personal jurisdiction over [EVERY]. Onego does not intend to proceed with litigation in Delaware unless that happens." *Id.* at 1 fn 1.

Thus, Onego is maintaining identical declaratory judgment and Lanham Act claims in two forums—here and W.D. Wisconsin.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 11 requires attorneys to conduct "an inquiry reasonable under the circumstances" so that every signed court filing satisfies each and every one of the following requirements:

> *First*, a filing must "not be[] presented for any improper purpose, such as to harass" another party.

> *Second*, the claims must be "warranted by existing law or by a nonfrivolous argument for extending" or modifying existing law.

> *Third*, "the factual contentions [must] have evidentiary support or ... [be] likely [to] have evidentiary support after" discovery.

Fed. R. Civ. P. 11(b)(1)-(3).

"If a party violates Rule 11, a court 'may impose an appropriate sanction on any attorney, law firm, or party that violated [Rule 11] or is responsible for the violation.'" *Scott v. Vantage Corp.*, 64 F.4th 462, 467 (3d Cir. 2023) (quoting Fed. R. Civ. P. 11(c)(1)). The purpose of Rule 11 "is to deter baseless filings in District Court and thus . . . streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). Objectively unreasonable litigation conduct includes "turn[ing] a blind eye" to the relevant facts. *Vehicle Operation Techs. LLC v. Am. Honda Motor Co. Inc.*, 67 F. Supp. 3d 637, 649, 651 (D. Del. 2014).

6

An attorney's reasonable investigation must be done before filing suit. *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1328–29 (Fed. Cir. 2011); *Garr v. U.S. Healthcare, Inc.*, 22 F.3d 1274, 1279 (3d Cir. 1994). As part of that pre-suit investigation, "a plaintiff should consult the sources at its disposal" (*Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 108 (3d Cir. 2015)) and to the extent it is practicable, evaluate the relevant product. *See, e.g., Refac Int'l, Ltd. v. Hitachi, Ltd.*, 141 F.R.D. 281, 286 (C.D. Cal. 1991).

Section 1927 provides that "any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "The purpose of ...section 1927 is to deter frivolous litigation and abusive practices by attorneys and to ensure that those who create unnecessary costs also bear them." *Kapco Mfg. Co. v. C & O Enters.*, 886 F.2d 1485, 1491 (7th Cir. 1989) (citations omitted).

## ARGUMENT

**I.    ONEGO IS PURSUING DUPLICATIVE LITIGATION IN THIS DISTRICT AND THE WESTERN DISTRICT OF WISCONSIN FOR AN IMPROPER PURPOSE**

Onego filed two identical complaints in two courts on the same day. *Compare* Wisc. D.I Nos. 1, 7 *with* D.I. Nos. 1, 19. A review of the pleadings shows that they are substantially word-for-word identical, assert the same claims for invalidity and non-infringement of the '784 Patent and for false advertising, and seek identical relief. *See* Ex. A.[2]

In Wisconsin, Onego insisted, over EVERY's objection, that discovery proceed (and is pursuing it with all speed) notwithstanding EVERY's case-dispositive, pending motion to dismiss. In Delaware, Onego purposefully delayed service, never moved for a stay, and waited until EVERY moved to dismiss before filing its amended complaint. Moreover, Onego's admission that

---

[2] All Exhibits are to the accompanying Declaration of Jeffrey M. Theodore.

it "does not intend to proceed with litigation in Delaware unless" dismissal occurs in Wisconsin (D.I. 19 n.1) evidences Onego's flagrant disregard for this Court and EVERY's limited resources – as well as its knowledge of the serious venue and personal jurisdiction problems with its Wisconsin litigation.

This is an abuse of the legal system that is sanctionable on its face. A principle *essential* to the efficient functioning of our multi-jurisdictional, federal system of justice is that the pendency of one suit defeats another when the two cases involve the same parties, purported rights, claims for relief, and underlying facts. *See The Haytian Republic*, 154 U.S. 118, 124 (1894). As the Third Circuit has explained, complaints based on the "the same operative facts and legal principles" do not warrant duplicative litigations. *McKenna v. City of Phila.*, 304 F. App'x 89, 92 (3d Cir. 2008). "It is clear that [a plaintiff] ha[s] no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." *Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977).

Courts regularly impose sanctions on parties that file duplicative litigations for tactical reasons. For example, in *New v. JPMorgan Chase Bank, NA*, 730 F. Supp. 3d 851, 853-56 (N.D. Ind. 2024), the Court sanctioned counsel for bringing two separate, identical actions. The Court explained that "to assert the same claim a second time before the first action has been finally decided is frivolous and abusive." *Id.* at 853 (quoting *Bailey v. United States*, No. 96 C 1405, 1996 WL 494270, *4 (N.D. Ill. Aug. 27, 1996)). "The irrationality of tolerating duplicative litigation in the federal system is all the more pronounced where, as here, two federal judges [are] devoting scarce judicial resources to the adjudication of the same charges by [ ] the same plaintiff[ ] against the same defendant[.]" *Id.* (quoting *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 224 (7th Cir. 1993)) (alterations in original).

8

Duplicative litigation wastes the Parties' and the courts' resources and threatens inconsistent results. For that reason, "any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. That is exactly what Onego has done, and the Court should impose that sanction here.

## II. ONEGO'S COMPLAINT AND AMENDED COMPLAINT MISREPRESENT AND OMIT FACTS

### A. Onego's False Advertising Claim Is Based on Allegations that Onego Knows to Be False and Knew Were False When It Filed the Amended Complaint

The premise of Onego's False Advertising Claim in its Amended Complaint is its allegation that EVERY's ovalbumin egg protein "contain[s] amino acids from both egg and yeast proteins" – as opposed to just egg protein – and "is genetically modified and [has] extra amino acids than those found in natural egg proteins." D.I. 19, ¶¶ 4, 59. Onego knew that these allegations were false when it filed its Amended Complaint and knows it today. Yet, Onego refuses to withdraw its allegations.

Onego knows that EVERY's ovalbumin does not contain extra amino acids because EVERY has supplied Onego with independent testing – performed by Iowa State University – establishing that EVERY's ovalbumin is amino-acid identical to that of native egg protein. (Ex. B.) The testing shows unequivocally that the amino acid sequence is identical and does not contain any yeast amino acids. *Id*. EVERY supplied this testing to Onego with an accompanying declaration on December 12, 2025 – more than a month before Onego filed its Amended Complaint in this case. (*Compare* Ex. B with FAC, D.I. 19.) Onego is well aware of this testing and its significance: it immediately subpoenaed Iowa State to obtain the testing documentation, which was supplied by Iowa State, and attached the Hurst Declaration. *See* Ex. C.

9

Moreover, Onego is in possession of EVERY's ovalbumin egg protein. Onego is able to – and almost certainly has – performed the same testing that would prove that Onego's allegations are false. Specifically, Onego purchased 454 grams of EVERY's ovalbumin from EVERY's customer, Healthier Comforts, on December 8, 2025. Ex. D. Indeed, in the Wisconsin action, Onego produced images showing that it is in possession of EVERY's ovalbumin. Ex. E. Onego purchased an additional 227 grams of EVERY's ovalbumin on January 7, 2026. Ex. D.

Onego's Wisconsin production also shows that it has performed *functional* testing of EVERY's protein – comparing it to natural egg protein and natural egg protein products. Ex. F. However, Onego has refused to tell EVERY whether it has performed any *amino acid* testing that would bear on its allegation that EVERY's ovalbumin has a different amino acid sequence from natural egg. Ex. D. Presumably, Onego has also amino-acid tested EVERY's protein and did not get the results it wanted. And presumably, Onego's second purchase reflects a dissatisfaction with the results of Onego's amino acid testing on the EVERY protein that Onego purchased in December.

But either way, Onego is not entitled to proceed with this suit. To the extent that Onego has tested EVERY's ovalbumin, Onego has confirmed what EVERY's testing shows – that Onego's allegation regarding the amino acid sequence of EVERY's ovalbumin is false and Onego's false advertising claim regarding ovalbumin is baseless. To the extent that Onego has not tested EVERY's ovalbumin, it is in possession of EVERY's testing and has chosen to be willfully blind itself to confirmatory evidence in its own possession. Either way, Onego is maintaining its false advertising claim in bad faith and Onego was aware of that dispositive fact when it filed its amended complaint in this Court. Onego's decision to continue with its suit despite knowing that its amino acid allegations are false is a further violation of Rule 11.

10

This abuse of litigation is sanctionable. Rule 11 sanctions are appropriate where a party and its attorneys made "factual assertions they know—or after reasonable investigation should have known—are false or wholly unsupported." *See Wharton v. Superintendent Graterford SCI*, 95 F.4th 140, 148 (3d Cir. 2024); *see also Certified Nutraceuticals v. Avicenna Nutraceutical*, No. 3:16-CV-02810, 2018 WL 5840042, at \*2, \*4 (S.D. Cal. Nov. 7, 2018) (finding Lanham Act suit frivolous and awarding attorney fees).

Even if Onego did not test the EVERY ovalbumin in its possession, "Rule 11 requires that parties and attorneys make reasonable inquiries into the facts before filing a complaint and emphasizes continuing candor once it becomes clear that a position is untenable." *Milwaukee World Trading LLC v. Kapsch*, No. 22-CV-322, 2023 WL 2541556, at \*16 (E.D. Wis. Mar. 16, 2023). An attorney "cannot avoid sanctions by claiming subjective good faith if a reasonable inquiry into the facts and law would have revealed the frivolity of the position." *Id.* at \*14 (quoting *McGreal v. Vill. of Orland Park*, 928 F.3d 556, 560 (7th Cir. 2019)); *see also Wharton*, 95 F.4th at 148 ("Lawyers cannot avoid sanctions by unreasonably failing to investigate whether their factual contentions have support."). Here, Onego knew based on EVERY's – and likely its own – testing that its amino acid allegations were false.[3]

---

[3] Onego has cited a five-year-old EVERY GRAS Notice from EVERY's product development period. D.I. 19 ¶ 58. But as Onego knows from the testing and as EVERY has told Onego, that GRAS notice does not describe the final version of EVERY's development of ovalbumin protein: EVERY updated its ovalbumin eliminate any extra amino acids in early 2022 – well before Onego even attempted to enter the market. *See* Exs. G, H. Protein expression systems are refined and optimized, and FDA regulations permit manufacturers to self-certify GRAS food ingredients and that are not the subject of publicly accessible FDA files. 21 C.F.R. § 170.30(a); see also U.S. Food & Drug Administration, Guidance for Industry: Best Practices for Convening a GRAS Panel (Dec. 2022), available at https://www.fda.gov/regulatory-information/search-fda-guidance-documents/guidance-industry-best-practices-convening-gras-panel. That is what EVERY has done as reflected in EVERY's subsequent self-GRAS documentation reflecting no additional amino acids. Ex. G, H. Onego has long been in possession of that documentation but refuses to withdraw its allegations.

**B.      Onego's Allegation that It Has a Commercial Product Is False**

Onego's complaints, assertion of declaratory judgment jurisdiction, and false advertising claim also rely on the contention that Onego has "commercially successful technology" (D.I. 1 ¶ 15; D.I. 19 ¶ 19) as the basis for Onego's claim that the parties are in commercial competition. D.I. 19 ¶¶ 62, 120. This too is false.

Onego does not have any commercial-scale product with which it could be in competition with EVERY commercial products, and the only records it has produced are of a handful of shipments of samples. Tellingly, none of Onego's complaints in any jurisdiction, nor its opposition to dismissal in Wisconsin, identify any such product nor any evidence that such a product might exist. And Onego has refused to answer EVERY's Wisconsin Request for Admission asking for an admission that Onego has no commercial product. (*See* Ex. I at RFA 84.) Onego's refusal to respond reveals that it knows both that: (1) it has no commercial product, contrary to its pleadings; and (2) that fact is material and devastating to its false advertising claim.

Investigation of whether a commercial product actually exists prior to asserting to multiple federal courts the fact of that existence is the absolute minimum of a reasonable investigation, which is apparent Onego did not conduct in violation of Rule 11. *See, e.g., Milwaukee World Trading*, 2023 WL 2541556 at *16-17 (imposing sanctions for assertions made in a complaint without reasonable inquiries into underlying facts); see *Ellis v. Beemiller, Inc.*, 287 F.R.D. 326, 337-40 (W.D. Pa. 2012) (finding attorney conduct objectively unreasonable for failing to investigate facts underlying the claim).

**C.      Onego's Allegations that EVERY Threatened It and Asserted the '784 Patent Against It Are False**

Onego's false factual allegations extend to the essential premise of its argument for subject-matter jurisdiction. In other words, this entire litigation is founded on demonstrably false

allegations of fact. EVERY has explained why these allegations are inadequate and the case should be dismissed. *See* D.I. 26. But that relief is not sufficient. Onego's false allegations are not made in good faith and have forced EVERY and this Court to waste resources on litigation that does not involve a live dispute. That is sanctionable.

To claim a genuine case or controversy regarding the '784 Patent, Onego alleges that EVERY has made "attempts to enforce the '784 patent," "attempted to extort unwarranted patent license fees," and made "threats regarding its patent portfolio." D.I. 19 ¶¶ 2, 5, 13. Because the actual communications are available on the docket and were in Onego's possession, these are "factual assertions [Onego counsel] know[s]—or after reasonable investigation should have known—are false or wholly unsupported." *Wharton*, 95 F.4th at 148.

The actual communications demonstrate that EVERY made no such threats and never asserted its patent. On the contrary, *Onego* contacted EVERY to "explore" "several areas of mutual interest," including proposing collaboration and a cross-license. (D.I. 10-1 Ex. 3.) In response, EVERY never made any threat or even an accusation of infringement. (*Id.* Exs. 3–7.)

In support of its "threat" allegation, Onego alleges that "Every stated in a July 30, 2025 email to Onego that 'we want to reiterate that we are very confident in our patent portfolio and strongly discourage pursuing the invalidation option you articulated.'" D.I. 19 ¶ 13. But Onego omits that this language came only in response to *Onego's* threats to challenge patent validity via "proactive" litigation and "a public and potentially irreversible invalidation procedure that would drain both parties' resources and damage Every's IP portfolio." (D.I. 10-1 Exs. 4, 6, 7.) In other words, this was not an affirmative threat but a statement that EVERY would not be bullied by *Onego's* threats of anticipatory litigation. Likewise, EVERY's offers of patent *cross*-license terms

13

came only in *response* to Onego's licensing proposals. (*Id.*) When those conversations came to nothing, EVERY did not take any affirmative action – Onego did.

Onego also alleges that EVERY threatened it "by stating 'We encourage you and your team to diligence our patent portfolio to fully understand where and how the patents apply to Onego.'" D.I. 19 ¶ 15. Onego omits to disclose that this was not a threat but came as a response to Onego's request to know "What intellectual property rights do you think Onego actually requires from EVERY in order to operate commercially? . . . [W]e are unsure how EVERY's technology is directly relevant to Onego[.]" D.I. 10-1 Ex. 6 at 6–8. In other words, EVERY was not threatening Onego but was *declining Onego's invitation* to assert that its patents applied to Onego. The actual conversation is the *opposite* of Onego's allegations.

Onego's factual allegations are simply not supported by the actual record of communications between the parties, and no good-faith attorney could possibly construe them in a way that aligns with the allegations in Onego's pleadings. If anything, the record demonstrates that Onego spent months – likely at the direction of its attorneys – fishing in vain for statements that might support a declaratory judgment litigation while EVERY simply wanted both Parties to go about their business. Onego and its counsel then chose to file suit anyway – twisting and misrepresenting the dialog in an effort to manufacture subject matter jurisdiction. That is exactly what Rule 11 and Section 1927 do not permit. Counsel may not misstate facts in order to justify unnecessary litigation; when they do, they must "satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

## III.    THE COURT SHOULD DISMISS THE COMPLAINT AND ORDER ONEGO AND ITS COUNSEL TO PAY EVERY'S FEES

The Court should dismiss Onego's Amended Complaint with prejudice because Onego initiated and is maintaining this duplicative litigation knowing that its false advertising claim is

premised on false allegations. *See Vehicle Operation Techs*, 67 F. Supp. 3d at 653; *Doering v. Union Cnty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988). Onego is pursuing this litigation, in violation of Rule 11, for the improper purpose of harassing EVERY into granting Onego rights to EVERY's significant intellectual property portfolio.

The Court should also award EVERY the fees that it is incurred as a result of Onego's improper, false, and duplicative litigation. Fees are awarded as a sanction based on "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Lieb v. Topstone Indus.*, 788 F.2d 151, 156 (3d Cir. 1986).

EVERY is an innovative company with limited resources. It has raised a finite amount of capital with which it needs to refine and develop the market for its products. Each dollar that EVERY spends on this litigation is one less dollar that it can spend on building its business. Onego, not EVERY, should bear the cost of Onego's false allegations and improper litigation conduct. The Court should "grant[] th[is] motion for sanctions and order[] [EVERY] to file briefing and other documentation in support of its request for reasonable attorney fees and costs." *New*, 730 F. Supp. 3d at 856.

**CONCLUSION**

The Court should dismiss the suit with prejudice and order that Onego and its lawyers to pay EVERY all attorneys' fees and costs incurred in this case.

15

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

By: */s/ Bindu A. Palapura*
       Bindu A. Palapura (#5370)
Jeffrey M. Theodore
Yekaterina Kushnir
BRAUNHAGEY & BORDEN LLP
747 Front Street
4th Floor
San Francisco, CA 94111
Tel: (415) 599-0210

Andrew M. Moshos (#6685)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
bpalapura@potteranderson.com
amoshos@potteranderson.com

Dated: May 11. 2026
12915722 / 25461.00001

*Attorneys for Defendant Clara Foods Co.*
*d/b/a The EVERY Company*

16