**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **ONEGO BIO INC.,**<br><br>*Plaintiff,*<br><br>v.<br><br>**CLARA FOODS CO. d/b/a THE EVERY COMPANY,**<br><br>*Defendant.* | **Case No. 1:25-cv-01131-JDW** |

**MEMORANDUM**

In 2025, Onega Bio, Inc. tried to egg The EVERY Co.[1] into a fight over intellectual property. But, like Marty McFly facing Buford Tannen,[2] EVERY refused to take the bait. Instead, EVERY tried to avoid a fight. Nonetheless, Onego seeks a declaratory judgment that EVERY's patent covering recombinant ovalbumin protein is invalid and unenforceable and that Onego does not infringe the patent. Because there was not an imminent, substantial controversy between the Parties when Onego filed this lawsuit, the Court does not have subject matter jurisdiction over those claims. In addition, Onego lacks statutory standing to pursue a claim for false advertising under the Lanham Act and has failed to

---

1 Clara Foods Co. does business as "The Every Company," and I will refer to it as "EVERY" in this opinion.

2 BACK TO THE FUTURE III (Universal Pictures 1990).

state a claim for tortious interference under state law, so I will dismiss each of the claims in its Amended Complaint.

## I. RELEVANT BACKGROUND

### A. Factual History

Onego is a biotechnology company that spun off from VTT Technical Research Centre of Finland in 2022. Onego "specializ[es] in the production of animal-free egg proteins through precision fermentation" and "aims to revolutionize the food industry by offering sustainable and ethical alternatives to traditional egg products." (D.I. 19 at ¶ 23.) Onego uses a fungus—*Trichoderma reesei*—to make recombinant ovalbumin. Ovalbumin is the primary protein in egg whites. "Onego's protein offers a bioidentical alternative to traditional egg whites, providing the same nutritional and functional properties without the environmental and ethical concerns associated with conventional egg production." (*Id.* at ¶ 27).

In 2024, Onego secured funding to scale-up production and expand its market presence in North America. To that end, Onego acquired 25.9 acres in Jefferson County, Wisconsin, where it plans to build a 130,000-square-foot facility to produce its protein product. When Onego filed its Amended Complaint, it was in the process of "selecting partners for … engineering work," and "the U.S. Department of Agriculture ha[d] given Onego the green light to support the financing of its manufacturing in Wisconsin." (*Id.* at

¶ 32.) "As part of Onego's expansion efforts in the United States, Onego has shipped its protein products here." (*Id.* at ¶ 33.)

EVERY is another biotechnology company that makes animal-free egg proteins. However, instead of using a fungus, EVERY uses a yeast strain—*Pichia pastoris* (a/k/a *Komagataella phaffii*)—to make the protein. EVERY owns U.S. Patent No. 12,096,784 entitled Protein Compositions And Consumable Products Thereof (the "'784 Patent") and claims that its patent covers certain egg protein substitutes. According to Onego, EVERY has made false representations about its own product by claiming in press releases and presentations that the egg protein it makes is "equivalent," "bio-identical," and "nature-equivalent" to what is found in natural eggs. (D.I. 19 at ¶¶ 55-56.) Onego contends that EVERY's egg protein contains up to 13 amino acids not found in natural egg protein. Onego also alleges that EVERY's protein contains amino acids from yeast proteins. As a result, Onego argues that EVERY's product "cannot fairly be called 'equivalent', 'bio-identical', or 'nature-equivalent' to natural egg proteins, and such statements are false and/or misleading." (*Id.* at ¶ 62.) Onego claims that EVERY's alleged false statements have injured (and will continue to injure) Onego.

According to Onego, EVERY has been interested in the technology surrounding the use of *Trichoderma reesei* to make egg protein for many years. In 2018, EVERY approached VTT (Onego's predecessor) about this technology, and the two companies "had detailed discussions over the course of 2018, 2019, and 2020." (D.I. 35-1 at ¶ 9.) Now,

Onego uses the technology that EVERY had sought from VTT. Onego's co-founder and Chief Technology Officer, Christopher Landowski, alleges that since August 2024, investors started advising him that EVERY had been telling them that Onego may be infringing some of EVERY's patents, including the '784 Patent.

In May 2025, lines of communication opened between EVERY and Onego. On May 16, 2025, another Onego co-founder, Maija Itkonen, reached out to EVERY about exploring "several areas of mutual interest" and "unlock[ing] real value" for EVERY. (D.I. 10-1 at Ex. 3.) The Parties entered into an NDA to facilitate those discussions. On July 2, 2025, Ms. Itkonen wrote to EVERY's CEO, Arturo Elizondo, proposing that the Parties grant cross-licenses to each other and enter covenants not to sue each other for patent infringement. Ms. Itkonen cautioned Mr. Elizondo that Onego would not "accept any limitation to its freedom to operate that is based on invalid IP assets." (D.I. 10-1 at Ex. 4.) She then advised Mr. Elizondo that Onego had determined that EVERY's European patent over a food item comprising recombinant ovalbumin was invalid and warned EVERY that it would be better for EVERY to license its patents to Onego "rather than to enter into a public and potentially irreversible invalidation procedure that would drain both parties' resources and damage Every's IP portfolio." (*Id.*) If EVERY refused to reach an agreement with Onego, then Onego would "take proactive measures to safeguard [its] interests in a potential invalidation case against Every's European patent …." (*Id.*)

EVERY's CFO, Evan Geisert, responded that EVERY was "very confident in [its] patent portfolio and strongly discourage[d] pursuing the invalidation option [Onego] articulated," and he expressed a "desire is to come to a business resolution with" Onego instead. (D.I. 10-1 at Ex. 6.) He suggested the Parties grant each other cross-licenses or consider merging into a new company. Weeks later, Ms. Itkonen rejected the merger option due to "strict timelines." (*Id.*) The next day, she warned that the "clock is ticking" and decided to "send one more email" to encourage EVERY to reach an agreement with Onego. (*Id.*) To that end, Ms. Itkonen advised EVERY that if the Parties could not reach an agreement "in the very near term," then Onego would "have no choice but to initiate formal opposition proceedings" to EVERY's European patent and "begin the necessary legal steps to invalidate the granted patents in other relevant jurisdictions." (*Id.*)

In response to this ultimatum, Mr. Elizondo reiterated EVERY's position that "[a] creative, mutual agreement is certainly a better choice than an expensive, protracted, unpredictable legal attack—for both Onego and EVERY." (*Id.* at Ex. 7.) However, he also made clear that EVERY would "vigorously defend" its patents "if attacked." (*Id.*) Mr. Elizondo boasted about "the strength, robustness, and legitimacy of [EVERY's] patent estate, … including multiple ovalbumin and trichoderma-related patents across jurisdictions." (*Id.*)

This prompted Ms. Itkonen to seek clarity as to how EVERY believes its "technology is directly relevant to Onego," and she asked Mr. Elizondo to "identify the patents and

patent claims that [EVERY] believe[s] are essential[.]" (D.I. 10-1 at Ex. 6.) Mr. Elizondo declined to do so, stating that EVERY was "not in a position to provide Onego with Intellectual Property guidance," and he encouraged Onego to undertake its own analysis "to fully understand where and how [EVERY's] patents apply to Onego." (*Id.*) The Parties explored engaging a third party to facilitate a possible merger, but it appears that their discussions fizzled out by late August 2025.

### B. Procedural History

On September 10, 2025, Onego filed its initial Complaint in this matter as a placeholder for an identical action it filed in the Western District of Wisconsin. However, Judge James Peterson dismissed the Wisconsin case against EVERY for lack of personal jurisdiction on May 5, 2026. In the meantime, Onego filed an Amended Complaint in this action, seeking a declaratory judgment that the '784 is invalid and unenforceable and that Onego does not infringe that patent. Onego also asserted a claim for false advertisement under the Lanham Act. EVERY has moved to dismiss all those claims, as well as a claim for tortious interference under state law (to the extent Onego intended to assert such a claim). The case was reassigned to me, and EVERY's motion is ripe for disposition.

## II. LEGAL STANDARDS

### A. 12(b)(1)

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction … any court of the United States … may declare the rights and other legal

relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1376 (Fed. Cir. 2012) (quotation omitted). The Act's reference to "a case of actual controversy" "refers to the types of 'cases' and 'controversies' that are justiciable under Article III of the U.S. Constitution." *Id.* (citation omitted). "[T]he question in each case is whether the facts alleged … show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quotation omitted).[3] A plaintiff seeking a declaratory judgment "must plead facts sufficient to establish jurisdiction at the time of the complaint[.] … [P]ost-complaint facts cannot create jurisdiction where none existed at the time of filing." *Mitek Sys., Inc. v. United Servs. Auto. Ass'n*, 139 F.4th 1340, 1348 (Fed. Cir. 2025) (quotation omitted).

A challenge to subject matter jurisdiction under Rule 12(b)(1) may be facial or factual. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016).[4] A facial attack raises a pleading deficiency without disputing the facts alleged in the complaint, and it requires the court to accept the allegations of the complaint as true. *Id.* (quotation omitted). As its

---

[3] In patent cases like this one, "[w]hether an actual case or controversy exists so that a district court may entertain an action for a declaratory judgment of non-infringement and/or invalidity is governed by Federal Circuit law." *3M Co.*, 673 F.3d at 1377 (quotation omitted).

[4] Because the standard for adjudicating a motion under Federal Rule of Civil Procedure 12(b)(1) is "a nonpatent-specific issue," regional circuit law applies. *Mitek*, 34 F.4th at 1341.

name suggests, a factual attack raises a factual dispute, "either through the filing of an answer or otherwise present[ing] competing facts." *Id.* (quotation omitted). Unlike a facial attack, no presumption of truthfulness attaches to the allegations in the complaint. *Id.* Instead, the court may weigh evidence outside of the pleadings and "satisfy itself as to the existence of its power to hear the case." *Id.* (citation omitted). And regardless of whether the challenge is facial or factual, the plaintiff bears the burden of establishing subject matter jurisdiction. *Id.* at 349 (citation omitted). If the court concludes that it lacks subject matter jurisdiction, it must dismiss the case. *See* Fed. R. Civ. P. 12(h)(3).

### B. 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). I must accept the factual allegations in the Complaint as true, draw inferences in favor of the plaintiff, and determine whether the claim is plausible on its face. *See Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021). Conclusory allegations or legal conclusions do not suffice. *See Iqbal*, 556 U.S. at 678.

## III. ANALYSIS

### A. Declaratory Judgment Act

EVERY has mounted a factual attack to the Court's subject matter jurisdiction over Onego's declaratory judgment claims. And where, as here, the jurisdictional inquiry is not

"intertwined" with the facts "going to the merits" of Onego's claims, I need not accept the Amended Complaint's factual allegations as true. *Davis*, 824 F.3d at 348 (quotation omitted). Having considered the Parties' competing evidence on this issue, I conclude that the Court does not have subject matter jurisdiction over Onego's patent claims because the facts do not reveal "a 'definite and concrete' dispute" between Onego and EVERY as to the '784 patent. *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1362 (Fed. Cir. 2009).

In the patent context, a case or controversy does not exist just because "a competitor desires to mount a validity challenge." *Streck, Inc. v. Rsch. & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1284 (Fed. Cir. 2012). Instead, to establish subject matter jurisdiction, Onego must show that EVERY committed "some affirmative act" to assert its patent rights. *Mitek*, 139 F.4th at 1348 (quotation omitted). But the evidence before me doesn't show that EVERY did anything to assert its rights against Onego. On the contrary, the facts make clear that Onego played the instigator. But picking a fight with a perceived competitor isn't enough to establish declaratory judgment jurisdiction.

The evidence makes clear that Onego was the one to initiate contact, offering "certain technologies" that "could unlock real value" for EVERY. (D.I. 10-1 at Ex. 3.) To that end, the Parties entered into an NDA. However, by July 2025, Onego had threatened EVERY with invalidation proceedings "that would drain both parties' resources and damage Every's IP portfolio" if EVERY did not agree to enter into a cross-license with Onego. (D.I. 10-1 at Ex. 4.) EVERY did not respond with a threat of litigation. Instead, it expressed confidence

"in the strength, robustness, and legitimacy of its patent estate" and explained that it would "vigorously defend it if attacked." (D.I. 10-1 at Ex. 7.) While EVERY touted its patent portfolio in communications with Onego, it never singled-out the '784 Patent or accused Onego of infringing it. In fact, EVERY made clear that it was "not in a position to provide Onego with [IP] guidance" as to how ***any*** of its patents might apply to Onego. (D.I. 10-1 at Ex. 6.) In short, none of EVERY's communications to Onego evidences an affirmative act by EVERY to assert its patent rights. Instead, the record reveals that EVERY continued to respond to ***Onego's*** threats of litigation by trying to deescalate and find potential business solutions.

Onego seems to acknowledge this, arguing that EVERY's failure to use "words such as 'litigation' or 'infringement'" is not dispositive of whether there is an actual controversy between them with respect to the '784 Patent. Of course, a patentee cannot defeat a declaratory judgment action by declining to invoke "magic words" in its communications with a possible infringer. *Hewlett-Packard*, 587 F.3d at 1362. However, the cases on which Onego relies to suggest that an implicit threat creates an actual case or controversy involve factual scenarios that are very different from what happened in this case. Of note, in a declaratory judgment action like this one, there was an actual controversy because the patent owner hired a third-party "specialist in 'monetizing' patents" to advise the plaintiff that there was basis for the owner to bring infringement claims against it. *Renaissance Learning, Inc. v. Doe No. 1*, No. 11-cv-166, 2011 WL 5983299, at *4 (W.D. Wis. Nov. 29, 2011). But EVERY never took that sort of affirmative step to suggest that it was going to

sue Onego or otherwise assert the '784 Patent against it. And the remaining cases that Onego cites involve a patentee threatening a potential infringer, something that EVERY never did.[5]

Onego's pivot to EVERY's alleged communications with investors and customers does not support declaratory judgment jurisdiction either. As an initial matter, it is not clear to me that I can consider the third-party hearsay in Mr. Landowski's declaration.[6] However, I need not resolve that question because those statements do not demonstrate that there was a substantial controversy over the '784 Patent "of sufficient immediacy and reality to

---

[5] For example, in *Red Hat*, the patentee sent the plaintiff an "unsolicited letter" that announced its ownership of the patents, asserted that the plaintiff was using technology covered by those patents, provided an example of the patentee's enforcement of its patents, and requested an "immediate response." *Red Hat, Inc. v. Competitive Access Sys., Inc.*, 786 F. Supp. 3d 945, 956 (E.D.N.C. 2025). In another case, the patent owner made a presentation to the plaintiff that identified the patents the owner believed the plaintiff infringed and made clear that the owner's business model was based on "su[ing]parties just like [P]laintiff." *Hewlett Packard Enter. Co. v. Intell. Ventures I LLC*, No. 22-cv-730, 2022 WL 17403485, at *2 (D. Del. Dec. 2, 2022). Likewise, another patent owner sent a letter to the plaintiff asserting patent ownership, claiming the funds to legally enforce its patents, and informing the plaintiff that it appeared to be making or selling products that were "'nearly identical' to the patented products[.]" *Rain Gutter Pros, LLC v. MGP Mfg., LLC*, 55 F. Supp. 3d 1330, 1335 (W.D. Wash. 2014).

[6] "[O]nce a defendant has raised a jurisdictional defense, a plaintiff bears the burden of proving by affidavits or **other competent evidence** that jurisdiction is proper." *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996) (emphasis added). The Third Circuit "has not defined 'competent evidence' in this context." *Saraceni v. MerchSource, LLC*, No. 21-cv-4947, 2022 WL 283104, at *4 (E.D. Pa. Jan. 31, 2022). However, other Courts of Appeals have indicated that hearsay is not competent evidence in the context of a jurisdictional inquiry. *See, e.g.*, *Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 506 (6th Cir. 2014); *Kamen v. AT&T*, 791 F.2d 1006, 1011 (2d Cir. 1986).

warrant the issuance of a declaratory judgment" when Onego filed suit. *MedImmune*, 549 U.S. at 127.

*First*, Mr. Landowksi has no personal knowledge of any of the alleged statements that EVERY made to investors about whether it believed Onego's products infringe EVERY's patents.[7] Thus, EVERY's alleged statements to third parties—outside of Mr. Landowski's presence—have little to no probative value. Indeed, one of the alleged parties to those conversations—Mr. Elizondo—denies that he told the investor that Onego is infringing an EVERY patent. And because Mr. Landowski was not part of those discussions, he is not in a position to rebut Mr. Elizondo's denial. The third-party statements suffer from other flaws as well. For example, Mr. Landowski reports having a call with an investor on February 4, 2026, during which the investor relayed alleged communications from "an ***ex***-EVERY Board Member." (D.I. 35-1 at ¶ 17 (emphasis added).) Thus, it is not clear that the former board member was authorized to speak on EVERY's behalf. And, in any event, that call with Mr. Landowski cannot establish jurisdiction over declaratory judgment claims that Onego filed more than 4 months ***earlier***.

*Second*, even if I were to accept the veracity of these statements, the context in which EVERY made them—to Onego's and EVERY's investors—suggests that these statements were forms of puffing rather than actual threats directed against Onego and its products. Relatedly, Mr. Landowski's declaration alleges that EVERY made these statements

---

7 While similar, a lack of personal knowledge presents a different issue than hearsay.

while expressing a desire to acquire Onego, not sue it. Thus, even if true, EVERY's statements to third-party investors are insufficient to demonstrate that there was a definite and concrete dispute between the Parties when Onego filed suit.

While EVERY's refusal "to sign a covenant not to sue is one circumstance to consider in evaluating the totality of the circumstances, it is not sufficient to create an actual controversy" absent an affirmative act to assert its rights as to the '784 Patent. *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1341 (Fed. Cir. 2008). Indeed, EVERY "has no obligation … to make a definitive determination, at the time and place of [Onego's] choosing, that it will never bring an infringement suit[,]" and its "silence does not alone make an infringement action or other interference with [Onego's] business imminent." *Id.* Thus, I will dismiss Onego's claims for a declaratory judgment for lack of subject matter jurisdiction.

**B. Lanham Act**

To state a claim for false advertising under the Lanham Act, Onego must allege: (1) EVERY made false or misleading statements about its product; (2) there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) the deception is material in that it is likely to influence purchasing decisions; (4) the advertised goods traveled in interstate commerce; and (5) there is a likelihood of injury to Onego as a result. *See Reybold Grp. of Companies, Inc. v. Does 1-20*, 323 F.R.D. 205, 209–10 (D. Del. 2017) (citations omitted). A plaintiff asserting a false advertising claim must also plead

proximate causation, which implicates statutory standing.[8] "To invoke the Lanham Act's cause of action for false advertising, a plaintiff must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 140 (2014). I will dismiss Onego's claim for false advertising because it has failed to plead either.

Onego has not pled an injury to any commercial sales because of EVERY's (allegedly false) claim that EVERY's products are "exactly identical" to natural proteins found in chicken eggs. (D.I. 19 at ¶ 56.) At most, it alleges that it "has been damaged, continues to be damaged, and is likely to be damaged in the future by Every's false advertising" and "the ***potential*** diversion of prospective consumers[.]" (*Id.* at ¶ 113 (emphasis added).) But these are conclusory allegations that "are not entitled to the presumption of truth." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). And Onego's allegations of commercial harm are not plausible in light of its other allegations. For example, nowhere in the Amended Complaint does Onego allege that it makes or sells its products in the United

---

8 EVERY has made clear that it is challenging Onego's statutory standing, as opposed to Article III standing. (*See* D.I. 26 at 10.) Thus, Federal Rule of Civil Procedure 12(b)(6) (rather than Rule 12(b)(1)) governs this aspect of EVERY's motion. *See CareDx, Inc. v. Natera, Inc.*, No. 19-cv-662, 2019 WL 7037799, at *4 (D. Del. Dec. 20, 2019), *report and recommendation adopted*, 2020 WL 401773 (D. Del. Jan. 24, 2020). As such, I confine my analysis to the allegations set forth in the Amended Complaint and accept any well-pled facts as true. I do not consider extraneous materials, such as the declarations and accompanying exhibits that the Parties submitted with their briefing.

States. At most, it alleges that it "has shipped its protein products here" as part of its expansion efforts into the United States. (D.I. 19 at ¶ 33.) The remaining allegations suggest that those expansion efforts were in their infancy as of January 13, 2026, when Onego filed its Amended Complaint. At that time, Onego had not even broken ground on its "***planned*** 130,000-square-foot facility." (*Id.* at ¶ 29 (emphasis added).) Because its own pleading admits that this facility is not yet operational, Onego's unspecified claims of damage are not sufficient to demonstrate an injury to its commercial sales. Likewise, absent ongoing operations, it is not plausible that Onego and EVERY "are competitors in the same market space." (D.I. 19 at ¶ 62.) At most, Onego's allegations suggest that it hopes to enter the U.S. market and become EVERY's competitor. Thus, there is no basis for me to presume that Onego suffered a commercial injury. *See TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 826 (9th Cir. 2011).

Onego's claims about harm to its reputation fare no better. *First*, it does not plead any facts to support its assertion that EVERY's alleged "false and/or misleading representations undermine the value of any characterizations made by Onego, causing damage to Onego's business." (D.I. 19 at ¶ 64.) Indeed, Onego does not identify which of its "characterizations" EVERY's statements undermine.

*Second*, Onego's assertion that "[a]ny negative perception from misrepresentations by Every will harm the market as a whole, causing Onego economic and/or reputational injury" is not a cognizable injury under the Lanham Act, regardless of "the nascent nature

of the animal-free egg protein market." (*Id.*) "[A]lthough indirect commercial injuries may create standing under the Lanham Act, 'general harm' to the market, including deception of consumers, 'is an insufficient basis to support a finding of a commercial injury to Plaintiff.'" *Vampire Fam. Brands, LLC v. MPL Brands, Inc.*, No. 20-cv-9482, 2021 WL 4134841, at *7 (C.D. Cal. Aug. 6, 2021).[9] Indeed, "the alleged loss of goodwill must be based upon loss of goodwill **to the plaintiff's product**." *Skydive Arizona, Inc. v. Quattrochi*, No. 05-cv-2656, 2006 WL 2460595, at *10 (D. Ariz. Aug. 22, 2006) (emphasis added).

Onego does not include any factual averments that make it plausible that EVERY's statements about its own products will damage the goodwill associated with products that Onego plans to sell in the United States.[10] But Onego must allege "some facts in the pleadings that serve as links in the chain of inferences necessary to establish proximate cause under the Lanham Act." *Nespresso USA, Inc. v. Ethical Coffee Co. SA*, No. 16-cv-194, 2017 WL 3021066, at *4 (D. Del. July 14, 2017). It has failed to do so, so I will dismiss its false advertising claims for lack of statutory standing.

---

[9] Other judges have reached the same conclusion at the pleading stage. *See, e.g.*, *ThermoLife Int'l LLC v. Am. Fitness Wholesalers LLC*, No. 18-cv-4189, 2019 WL 3840988, at *7 (D. Ariz. Aug. 15, 2019).

[10] Onego claims it "has a commercial egg protein product named Bioalbumen[.]" (D.I. 10-1 at ¶ 3.) Yet Onego never mentions Bioalbumen in any of its allegations in the Amended Complaint. And Mr. Landowski's carefully-worded declaration does not make clear whether Onego actually sells Bioalbumen in the United States. (*See* D.I. 35-1 at ¶ 3.) Thus, even if I could consider this declaration (which I cannot), it would not change my analysis.

For the same reasons, Onego has failed to state a claim for false advertising under the Lanham Act because proximate causation "is 'an element of the cause of action under the statute' …." *CareDx*, 2019 WL 7037799 at *4 (D. Del. Dec. 20, 2019). In its opposition brief, "Onego respectfully requests leave to amend." (D.I. 35 at 17.) It is not clear to me that Onego has a good faith basis to cure the pleading deficiencies I have identified. In any event, however, "a 'bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought … does not constitute a motion within the contemplation of Rule 15(a).'" *U.S. ex rel. Zizic v. Q2Administrators, LLC*, 728 F.3d 228, 243 (3d Cir. 2013) (quotation omitted). Even if its passing request were sufficient, Onego's failure to attach a draft amended complaint "is fatal to a request for leave to amend." *Id.* (same).

**C. Tortious Interference**

To the extent Onego's Amended Complaint includes a tortious interference claim, I will dismiss that claim, as Onego has abandoned it. Though Onego does not include a stand-alone cause of action for tortious interference under state law, the Amended Complaint contends that Onego's claims "arise[] from Every's tortious interference with Onego's current and prospective economic relationships …." (D.I. 19 at ¶ 3.) EVERY moved to dismiss such a cause of action for failure to state a claim under Delaware law, and I agree that the allegations in the Amended Complaint are far too vague and conclusory to plead this cause of action (to the extent Onego intended to do so). Moreover, Onego did not

respond to EVERY's argument as to dismissal or otherwise identify which allegations in the Amended Complaint are sufficient to satisfy the elements to support a tortious interference claim. Thus, I treat this issue as conceded and will dismiss this claim. *See, e.g.*, *Cheffers v. Ideagen Software Inc.*, No. 24-cv-866, 2025 WL 2549411, at *8 (D. Del. Sept. 4, 2025).

## IV. CONCLUSION

Onego has failed to demonstrate that the Court has subject matter jurisdiction over its declaratory judgment claims, so I will dismiss all of them. In addition, Onego does not have statutory standing to assert a false advertising claim under the Lanham Act and has failed to state a claim for tortious interference under state law. Thus, I will dismiss those claims as well. An appropriate Order follows.

**BY THE COURT:**

*<u>/s/ Joshua D. Wolson</u>*
JOSHUA D. WOLSON, J.

October 9, 2026